# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2023

Lyle W. Cayce
Clerk

———————

No. 22-20473

———————

THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE
COMPANY,

*Plaintiff—Appellant,*

*versus*

A.H.D. HOUSTON, INCORPORATED, *doing business as*
CENTERFOLDS; D WG FM, INCORPORATED, *doing business as*
SPLENDOR; D. TEXAS INVESTMENTS, INCORPORATED, *doing
business as* TREASURES; A.H.D. HOUSTON, INCORPORATED, *doing
business as* TREASURES; W.L. YORK, INCORPORATED, *doing business
as* TREASURES; JAIME MIDDLETON; CORA SKINNER;
JAMILLETTE GAXIOLA; JENNIFER XZHARINOVA; JESSICA
HINTON; LINA POSADA; LUCY PINDER; PAOLA CANAS; SANDRA
VALENCIA; TIFFANY TOTH; CIELO JEAN GIBSON; MAYSA QUI;
ELIZABETH TURNER; EMILY SEARS; GEMMA LEE FARRELL;
JACLYN SWEDBERG,

*Defendants—Appellees.*

———————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3680

———————

ON PETITION FOR REHEARING
AND REHEARING EN BANC

No. 22-20473

Before Elrod, Ho, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc, *see* Fed. R. App. P. 35; 5th Cir. R. 35, the petition for rehearing en banc is DENIED.

The petition for panel rehearing is GRANTED. Our prior panel opinion, 78 F.4th 815 (5th Cir. 2023), is WITHDRAWN, and the following opinion is SUBSTITUTED therefor:

This is an insurance coverage dispute arising out of litigation in Texas state court. Two insurance policies are at issue, and the district court concluded that both provided the insureds coverage. But the district court improperly construed the policies to reach that conclusion, so we reverse, render in part, and remand the remaining issue with instructions for the district court to stay its disposition of that issue pending final resolution of the underlying state court lawsuit.

## I.

## A.

This comparatively pedestrian contract dispute stems from a much more salacious lawsuit filed in Texas in 2017. Sixteen professional models (the Models) sued three Texas strip clubs known as Treasures, Centerfolds, and Splendor (the Clubs) following the Clubs' use of the Models' likeness for advertising campaigns without the Models' consent.[1] The Clubs' advertising material was manipulated to give the impression that the Models endorsed the Clubs or worked as strippers in the Clubs. The Models "were

---

[1] The Models asserted claims for invasion of privacy (misappropriation), respondeat superior negligence, and theft. The Models later dropped their theft claim.

No. 22-20473

depicted in various sexually-charged social media and Internet posts . . . encouraging patrons to visit [t]he Clubs." According to the Models, the Clubs participated in the selection, creation, and dissemination of these advertisements.

The state trial court granted summary judgment for the Models and awarded $1,405,000 in damages. The Clubs appealed the judgment to the Court of Appeals for the First District of Texas. That appeal has not yet been finally adjudicated on the merits.

## B.

Meanwhile, Princeton Excess and Surplus Lines Insurance Company (PESLIC) filed this declaratory judgment action. PESLIC issued two commercial liability insurance policies to the Clubs covering the time period relevant to the Models' claims: Number 1RA3GL0000179–01, with a policy period of November 9, 2015 to November 9, 2016 (the 01 Policy); and Number 1RA3GL0000179–02, with a policy period of November 9, 2016 to November 9, 2017 (the 02 Policy).[2]

The policies have identical coverage provisions but contain slightly different exclusions. Generally, they include three areas of coverage: "Coverage A—Bodily Injury and Property Damage Liability," "Coverage B—Personal and Advertising Injury Liability," and "Coverage C—Medical Payments." At issue under both policies is Coverage B, which in relevant part states:

---

[2] One plaintiff alleged a claim in the underlying lawsuit for conduct that occurred during the 01 Policy period, and the others brought claims for conduct during the 02 Policy period.

3

No. 22-20473

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injuries" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

Both policies define "Personal and [A]dvertising Injury" as:

> . . . injury, including consequential "bodily injury", arising out of one or more of the following offenses:

> a.   False arrest, detention or imprisonment;

> b.   Malicious prosecution;

> c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

> d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;

> f.   The use of another's advertising idea in your "advertisement"; or

> g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

No. 22-20473

The policies contain somewhat divergent exclusions, which largely determine the outcome of this case. The 01 Policy contains a "Field of Entertainment Exclusion," which reads:

> This insurance does not apply to any loss, claim, "suit", cost, expense, or liability for damages, directly or indirectly based on, attributable to, arising out of, involving, resulting from or in any way related to:
>
> a. Actual or alleged activity which is claimed to be an intellectual property infringement or violation of any of the following rights or laws: copyright, patent, trade dress, trade secrets, trade name, trademark or service mark;
>
> b. Actual or alleged invasion of privacy;
>
> c. Actual or alleged libel, slander, or any form or defamation;
>
> d. Actual or alleged unauthorized use of titles, slogans, names, formats, ideas, characters, artwork, theme, plots or other material;
>
> e. Actual or alleged infringement of copyright or common law rights in literary, artistic or musical material, or actual or alleged infringement of literary, artistic or musical rights codes; . . . .

In the district court, PESLIC argued that the Field of Entertainment Exclusion excluded from coverage Personal and Advertising Injury subsections d., e., and g., while leaving in force subsection f., coverage for use of another's advertising idea. If PESLIC's reading is correct, then coverage for the claim implicating the 01 Policy turns on whether the Clubs used the Models' "advertising idea," as the sole surviving relevant category of coverage.

No. 22-20473

The 02 Policy contains an "Exhibitions and Related Marketing Exclusion" that curtails coverage for Personal and Advertising Injury subsections d. through g.  The exclusion reads:

This insurance does not apply to:

. . .

The following parts of "personal and advertising injury":

> d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations goods, products, or services;

> e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

> f.    The use of another's advertising idea in your "advertisement"; or

> g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement";

If such activities arise out of or are part of "exhibitions and related marketing" . . . .

"Exhibitions and related marketing" means:

(a) The creation, production, publication, performance, exhibition, distribution, or exploitation of motion pictures, television programs, commercials, web or internet productions, theatrical shows, sporting events, music, promotional events, celebrity image or likeness, literary works and similar productions or work, in any medium including videos, phonographic recordings, tapes, compact discs, DVDs, memory cards, electronic software or media books, magazines, social media, webcasts and websites.

(b) The conduct of individuals in shows, theatrical productions, concerts, sporting events, or any other form of exhibition.

No. 22-20473

> (c) Merchandising, advertising or publicity programs or material for the operations and material described in (a) or (b) above.

The parties dispute whether this exclusion renders illusory the Personal and Advertising Injury coverage provided in the 02 Policy. If the exclusion renders the coverage illusory, then the exclusion lacks force, and the Clubs have coverage applicable to the Models' claims, as the district court held. If not, then the exclusion should be enforced to foreclose coverage for the Clubs.

## C.

In its declaratory action, PESLIC named both the Models and the Clubs as defendants. PESLIC alleged that "the policies d[o] not obligate it to defend or indemnify the Clubs." The parties filed three competing summary judgment motions in the district court. After the state trial court granted judgment for the Models, the parties provided supplemental briefing on the duty to indemnify in support of their respective dispositive motions. The district court granted the Models' and the Clubs' motions for summary judgment and denied PESLIC's.

As to the 01 Policy, the district court found that "the Models' pleadings in the underlying lawsuit sufficiently allege[d] that that the Clubs used [the] Models' images (i.e., their 'advertising ideas') and placed them in their own 'advertisements.'" Consequently, the district court held that PESLIC had a duty to defend and indemnify the Clubs under the 01 Policy.

As to the 02 Policy, the parties disputed whether that policy's Exhibitions and Related Marketing Exclusion rendered illusory the Personal and Advertising Injury coverage. The district court agreed with the Models and the Clubs that it did and "decline[d] to give effect to PESLIC's 'Exhibition and Related Marketing' exclusion." The court thus held that

No. 22-20473

PESLIC had a duty to defend the Clubs. The district court also held that PESLIC had a duty to indemnify the Clubs under the 02 Policy.

PESLIC now appeals.

## II.

We review a summary judgment *de novo*, applying the same legal standards as the district court. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In Texas, insurance policies are interpreted by the same principles as contract construction." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022) (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)). "When interpreting insurance contracts, courts seek 'to ascertain the true intentions of the parties as expressed in the instrument.'" *United Nat. Ins. Co. v. Mundell Terminal Servs., Inc.*, 740 F.3d 1022, 1027 (5th Cir. 2014) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "The words of the policy are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Terry Black's Barbecue*, 22 F.4th at 455 (internal quotation marks and citation omitted). We read all parts of the policy together and seek to give effect to each part. *Id.*

An insurance contract is ambiguous if it is subject to more than one reasonable interpretation. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "When an insurance policy is ambiguous, and the parties offer conflicting reasonable interpretations of the policy, Texas law favors adopting the interpretation in favor of the insured." *Terry Black's Barbecue*, 22 F.4th at 455 (citing *RSUI Indem. Co. v. The Lynd*

*Co.*, 466 S.W.3d 113, 118 (Tex. 2015)).  But we only reach this question if the policy provisions are subject to two or more *reasonable* interpretations.  *Id.*!

"[U]nder Texas's well-established eight-corners rule, an insurer's 'duty to defend is determined by the claims alleged in the petition and coverage provided in the policy.'"  *State Farm Lloyds v. Richards*, 966 F.3d 389, 392 (5th Cir. 2020) (per curiam) (quoting *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009)).  "The insureds have the initial burden to establish that a claim is potentially within the scope of coverage."  *Id.* at 393.  The burden then shifts to the insurer to show that it can avoid coverage.  *Id.*  An insurer's duty to defend and indemnify are separate duties.  *Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 535 (5th Cir. 2023) (internal quotations and citation omitted).  The duty to indemnify generally cannot be determined until the completion of litigation because it depends on the facts proven.  *Id.*; *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009).  A lack of duty to indemnify cannot be inferred from a lack of duty to defend, unless the reasons that negate the duty to defend negate any possibility the insurer will ever have a duty to indemnify.  *Liberty Mut.*, 75 F.4th at 535–36.

## III.

We first consider the 01 Policy.  As discussed above, it includes coverage for Personal and Advertising Injury.  But it also includes a Field of Entertainment Exclusion, which narrows the scope of that coverage.  We discuss the exclusion first, and then consider the coverage that remains in view of it.

## A.

The parties dispute the impact of the Field of Entertainment Exclusion in the 01 Policy.  Their disagreement centers on what coverage survives the exclusion and whether the exclusion renders illusory the policy's

No. 22-20473

Personal and Advertising Injury coverage. Texas courts disfavor construing insurance contracts such that coverage is rendered illusory. *See ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (adopting the insured's construction of an exclusion because the insurer's interpretation "would render coverage under [an] endorsement largely illusory"); *see also Northfield Ins. Co. v. Herrera*, 751 F. App'x 512, 518 (5th Cir. 2018) (per curiam). However, "when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory." *Herrera*, 751 F. App'x at 518. "An insurance policy is not illusory merely because it does not provide coverage for a claim the policyholder thought it would cover." *Balfour Beatty Const., L.L.C. v. Liberty Mut. Fire Ins. Co.*, 968 F.3d 504, 515 (5th Cir. 2020) (citing *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 410 n.4 (5th Cir. 1995) ("Texas law does not recognize coverage because of [the] 'reasonable expectation' of the insured.")).

By its terms, the Field of Entertainment Exclusion eliminates coverage for most of the "advertising injuries" included in the 01 Policy's Coverage B—Personal and Advertising Injury Liability. But it expressly excepts injuries encompassed by subsection f., for the use of another's "advertising idea." PESLIC contends that the exclusion should thus be enforced, reasoning that it is not illusory because it leaves significant coverage in place for Personal and Advertising Injury—just none that applies in this case.[3] We agree that the exclusion does not render coverage illusory and therefore is binding on the parties.

---

[3] PESLIC urges this court not to follow the nearly identical case from the Southern District of Florida, *Princeton Express v. DM Ventures USA LLC*, 209 F. Supp. 3d 1252 (S.D. Fla. 2016), in which a Florida district court refused to enforce the exclusion because it rendered coverage illusory for advertising injuries under Florida law. We agree with

No. 22-20473

The Models' principal contentions regarding the 01 Policy only buttress this conclusion. They agree that, whatever the scope of the exclusion, subsection f. remains in force—indeed, they assert subsection f. covers their claims, as the district court held. They further contend that subsection e., covering violations of a person's "right of privacy," remains viable and applies in this case. Only if these avenues fail do they alternatively contend that the exclusion renders coverage illusory and should be set aside.[4] But we need not get there, given that, as the parties agree, some measure of coverage survives for Personal and Advertising Injury. *See Herrera*, 751 F. App'x at 518; *see also Balfour Beatty Const.*, 968 F.3d at 515.

As for subsection e. and the "right of privacy," the Models' argument that coverage survives the exclusion is unavailing. They submit that subsection e. covers injury to the "right of privacy," while the exclusion eliminates coverage for a purportedly different injury, an "invasion of privacy." But in their state court action, the Models pled—and prevailed on—a claim for "Invasion of Privacy—Misappropriation," mirroring the terminology of the injury excluded from coverage by the Field of Entertainment Exclusion. So the wording of their own claim belies the idea that their injury was distinct from the type of injury implicated by the 01 Policy's Field of Entertainment Exclusion.

---

PESLIC on this point and do not find *DM Ventures* to be apt. That case applies Florida law, while this one turns on Texas law.

[4] For their part, the Clubs do not engage on these issues. Instead, they contend that, because the district court did not analyze the Field of Entertainment Exclusion or subsection e., this court need not do so. However, because we disagree with the district court's conclusion that the Clubs appropriated the Models' "advertising idea," such that coverage obtained under subsection f., it is necessary to consider the interplay between the exclusion and these categories of coverage.

No. 22-20473

Beyond the semantics, the Models provide no case supporting the idea that an "invasion of privacy" and a violation of the "right of privacy" are distinct torts in Texas law. Texas courts have historically recognized "four distinct torts encompassed under the category of invasion of the right of privacy." *Wood v. Hustler Mag., Inc.*, 736 F.2d 1084, 1088 (5th Cir. 1984). Those are appropriation, intrusion, public disclosure, and false light. *Justice v. Belo Broad. Corp.*, 472 F. Supp. 145, 146–47 (N.D. Tex. 1979).[5] None of these torts suggest that an "invasion of privacy" is distinct from a violation of the "right of privacy." To the contrary, they comprise the same tort in Texas, and the exclusion applies to preclude coverage under subsection e. of the 01 Policy's Personal and Advertising Injury coverage.

To sum up, the Field of Entertainment Exclusion is enforceable, as the 01 Policy nonetheless "will provide coverage for other claims[.]" *Herrera*, 751 F. App'x at 518. Coverage under the policy is thus not illusory. Subsection e. of the policy's Personal and Advertising Injury coverage does not survive the exclusion, but the parties agree that coverage remains for injuries encompassed by subsection f. The lingering question is whether that subsection applies to the claims at issue in this case.

## B.

Subsection f. covers injuries caused by "the use of another's advertising idea in [the Clubs'] 'advertisement.'" PESLIC avers that the district court erred when it found that the Clubs' unlawful use of the Models' images constituted use of their "advertising idea," bringing the Models' underlying claims within the ambit of subsection f. PESLIC contends that

---

[5] In 1994, the Supreme Court of Texas receded somewhat, holding that false light was not a cognizable tort in Texas. *Cain v. Hearst Corp.*, 878 S.W.2d 577 (Tex. 1994). The *Cain* court's holding does not alter our analysis.

No. 22-20473

"[t]he misappropriation of a person's image is not an appropriation of that person's 'idea.'" The Models, joined by the Clubs, respond that their images constitute "advertising ideas" by which they commercialize their brands, and they reject any notion that their images are "just fungible stock photos." Thus, the Clubs' use of the images falls squarely under subsection f., triggering PESLIC's duties to defend and indemnify the Clubs. We are persuaded that PESLIC has the stronger position.

"Advertising idea" is not defined in the 01 Policy. And "[t]he Fifth Circuit and Texas[] courts have not spoken directly to the definition of an advertising idea in [commercial general liability] policies . . . ." *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 259 (5th Cir. 2017) (citation omitted). In *Laney*, this court contemplated three definitions of "advertising idea" espoused by other courts: (1) "any idea or concept related to the promotion of a product to the public," *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002); (2) "an idea about the solicitation of business and customers," *Green Mach. Corp. v. Zurich-Am Ins. Grp.*, 313 F.3d 837, 839 (3d Cir. 2002); and (3) "a concept about the *manner* a product is promoted to the public," *Gemini Ins. Co. v. Andy Boyd Co.*, 2006 WL 1195639, at *2 (S.D. Tex. May 3, 2006). *See Laney*, 866 F.3d at 259–60 (discussing cases). But in deciding the coverage question there, our *Laney* colleagues did not adopt one of these definitions; instead that panel considered them together and held that no "advertising idea" was implicated where the defendant had unlawfully used a patented *product* and advertised that product on its website. 866 F.3d at 260–61.

To support the argument that the Models' images constitute their "brand" and therefore comprise an "advertising idea," the Clubs offer two out-of-circuit cases. *See Holyoke Mut. Ins. Co. in Salem v. Vibram USA, Inc.*, 106 N.E.3d 572, 579 (Mass. 2018); *Cont'l W. Ins. Co. v. Pimentel & Sons Guitar Makers, Inc.*, No. CIV 05-0067, 2005 WL 6332339, at *6 (D.N.M.

Nov. 16, 2005). The Clubs further point to *Mid-Continent Casualty Co. v. Kipp Flores Architects, L.L.C.*, 602 F. App'x 985 (5th Cir. 2015). In *Vibram*, the insured "used the name of a legendary barefoot marathon runner" to promote "running shoes that simulated barefoot running." 106 N.E.3d at 579. In *Pimentel & Sons*, the court found that "[a]llegations that an insured traded on a recognizable name or mark . . . qualif[ied] as the use of another's advertising idea." 2005 WL 6332339, at *6. And in *Kipp Flores*, an architect firm sued a homebuilder after the homebuilder built more homes than originally agreed using the firm's designs. 602 F. App'x at 987–88. This court held that the homes themselves served as "advertisements" for the firm's house plans, such that there was coverage for an advertising injury. *Id.* at 994.

None of the Clubs' cases are precedential. But they falter because they are also inapposite. For instance, in *Vibram*, the family of famed marathon runner Abebe Bikila had "intentionally created a connection between their family name and . . . Bikila's legacy and desirable qualities for purposes of using 'Bikila,' and everything it conveyed, to attract customers to their running-related commercial ventures." 106 N.E.3d at 488. In other words, Bikila's family branded his name to promote products associated with his accomplishments, and the unauthorized use of the runner's name thus constituted improper use of the family's advertising idea. Likewise, *Pimentel & Sons* involved improper use of a trademark—a quintessential (and protected) "advertising idea." By contrast, while the Models' curated photographs could similarly be used to promote an array of business ventures, the images themselves would not be the "advertising idea"; arranging them as part of a promotion might well be. In other words, image and idea are distinct, unlike the brands at issue in *Vibram* or *Pimentel & Sons*.

*Kipp Flores* does not change the calculus. Though the case turned on the novel notion that constructed homes served to advertise the architect's

underlying house plans, *Kipp Flores* did not hold that the builder had appropriated the architect's "advertising idea," i.e., that the builder had built more homes to advertise the architect's plans. *See* 602 F. App'x at 994 (holding that infringing houses qualified as "advertisements" under the disputed insurance policies). Indeed, the concept of "advertising idea" was not really at play in *Kipp Flores*, as the dispute centered on the threshold question of whether the homes were "advertisements." And the *Kipp Flores* policy was not similar enough to the 01 Policy to supply useful analogy.

Instead, we find *Laney* to be salient. Following that case's reasoning, the Clubs' misappropriation of the Models' images did not amount to use of their "advertising idea" because at essence, the Models' images are their products, not their advertising ideas. The Clubs took those products and used them without permission. "[W]ithout more, taking and then advertising another's product is different from taking another's 'advertising idea.'" *Laney*, 866 F.3d at 261. PESLIC, therefore, has no duty to defend the Clubs based on the 01 Policy's "advertising idea" coverage, and the district court erred in concluding otherwise.

However, the state court's summary judgment has yet to be finally adjudicated on appeal. Reversal of that judgment could change the facts to be analyzed in this case for the purpose of determining PESLIC's duty to indemnify, resulting in a stronger argument that the Models' images were their advertising ideas. Therefore, determination of PESLIC's duty to indemnify under the 01 Policy should be deferred pending final resolution of the state lawsuit. Accordingly, we remand as to this issue with instructions for the district court to stay the matter until it can revisit the issue, as necessary, with the benefit of final resolution of the state lawsuit.

No. 22-20473

## IV.

We now consider the 02 Policy, which applies to most of the Models' claims. Its scope of coverage turns on the policy's Exhibition and Related Marketing Exclusion, which eliminates coverage for Personal and Advertising Injury subsections d. through g. (pertaining to advertising injuries), to the extent "such activities arise out of or are part of 'exhibitions and related marketing.'" The exclusion leaves in force subsections a. through c. (covering personal injuries). The basic question presented is whether this exclusion works to render the relevant coverage illusory, such that it should not be enforced. The answer largely turns on whether the policy's Personal and Advertising Injury coverage should be viewed as one "umbrella" of coverage or carved into subcategories, i.e., bifurcated into personal injury coverage and advertising injury coverage. The district court took the latter approach and considered the exclusion's effect on subsections d. through g. in isolation. Doing so, the court found that the exclusion "essentially eliminates all advertising injury coverage in a move that is not condoned by Texas law," set it aside, and held there was coverage for the Models' claims under the 02 Policy.

PESLIC asserts that instead, the former approach is correct and that the district court's holding was thus in error. PESLIC contends that, though the exclusion removes coverage for the underlying lawsuit, it leaves significant coverage intact for other Personal and Advertising Injury claims. As a result, the exclusion does not make the 02 Policy's Personal and Advertising Injury coverage illusory—but it should be enforced to bar coverage in this case.

By contrast, the Models and the Clubs say the district court properly set aside the exclusion. They reason that commercial general liability policies historically separated these forms of coverage, as personal injury and

advertising injury are distinct types of injuries. Thus, the 02 Policy's Personal and Advertising Injury coverage really provides two separable subcategories of coverage. Because the exclusion curtails the policy's advertising injury coverage, the Models and the Clubs argue that it renders that subcategory of coverage illusory and should thus not be given effect. Despite the intuitive appeal of the Models' and the Clubs' reasoning, we again fall on PESLIC's side of the ledger.

First, we are not persuaded by the argument that commercial general liability policies have traditionally separated advertising injury coverage from personal injury coverage, such that we should segregate them in the 02 Policy. That argument requires us to look beyond the eight corners of the complaint in the underlying lawsuit and the insurance policy at issue, something we cannot do. *E.g.*, *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006); *see also Herrera*, 751 F. App'x at 515 ("Texas's 'eight-corners rule' instructs that an insurer's duty to defend must be determined 'solely from terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited.'" (citation omitted)).

Second, returning to the text of the 02 Policy, the interpretive issue here is not whether there is any factual scenario under the exclusion that would yield coverage for an advertising injury—though there very likely is, as the exclusion only withdraws coverage for subsections d. through g. "[i]f such activities arise out of or are part of 'exhibitions and related marketing.'" Rather, the question is whether Personal and Advertising Injury should be read as a single category of coverage, or split into two separate categories, as the district court approached it. If the former, then coverage under the 02 Policy is not illusory because no one disputes that coverage remains in force for subsections a. to c., encompassing enumerated personal injuries. *See Herrera*, 751 F. App'x at 518. If the latter, then the district court may have

been correct that the 02 Policy's coverage for advertising injuries is illusory because the Exhibition and Related Marketing Exclusion negates all such coverage for "exhibitions and related marketing."

But to slice and dice the policy language as the district court did in nullifying the exclusion is contrary to the policy's text and structure, and therefore to the intent of the parties. Personal and Advertising Injury coverage is delineated in the 02 Policy as one unit of coverage, with seven covered types of injuries listed in subsections a. through g. "Advertising Injury" is nowhere defined separately. Considering the plain policy text, the use of "and" to link "Personal *and* Advertising Injury" indicates that the policy grouped these injuries under the single rubric of "Coverage B— Personal *and* Advertising Injury Liability." Just as plainly, the policy's Exhibition and Related Marketing Exclusion then largely eliminates coverage for subsections d. through g., while leaving subsections a. to c. in force. Such drafting legerdemain may be cumbersome or counterintuitive, but it is also commonplace in insurance contracts. The one before us today, the 02 Policy, "is not illusory merely because it does not provide coverage for a claim the policyholder[s] thought it would cover." *Balfour Beatty Const.*, 968 F.3d at 515; *accord Iso-Tex*, 61 F.3d at 410 n.4 ("Texas law does not recognize coverage because of [the] 'reasonable expectation' of the insured.").

Instead, the text of the 02 Policy is not ambiguous, and Texas law "presumes that the party knows and accepts the contract terms." *Nat'l Prop. Holdings L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015). Those terms disclose that the policy's Personal and Advertising Injury coverage comprises a single category of coverage, and further that the Exhibition and Related Marketing Exclusion removes much, but by no means all, of that coverage. The 02 Policy is therefore not illusory, and the exclusion must be enforced,

No. 22-20473

constraining us to conclude there is no coverage, and thus no duty to defend, for the Models' underlying claims under the 02 Policy.[6]

A lack of duty to indemnify can be inferred from a lack of duty to defend when the reasons that negate the duty to defend also negate any possibility the insurer will ever have a duty to indemnify. *Liberty Mut.*, 75 F.4th at 536. After the exceptions are taken into account, no facts could be developed that transform the Clubs' use of the Models' images into conduct covered by the 02 Policy. Therefore, PESLIC does not have a duty to defend or indemnify the Clubs under the 02 Policy.

## V.

PESLIC does not have a duty to defend the Clubs under the 01 Policy. Its duty to indemnify under the 01 Policy depends on final resolution of the state case. As for the 02 Policy, PESLIC does not have a duty to defend or indemnify under it because the 02 Policy does not provide coverage for the claims alleged by the Models. The district court erred by concluding otherwise. So we reverse the court's summary judgment, render in part, and remand the remaining issue of indemnity under the 01 Policy with instructions for the district court to stay disposition of that issue pending final resolution of the underlying state court lawsuit.

REVERSED, RENDERED in part, and REMANDED.

---

[6] PESLIC also asks us to enforce the Knowing Violation of Rights of Another Exclusion in the 02 Policy. We need not reach that issue in view of our holding as to the other policy provisions at play.

No. 22-20473

Jᴀᴍᴇs C. Hᴏ, *Circuit Judge*, dissenting:

The panel majority makes a reasonable *Erie* guess as to how Texas law might answer the questions presented in this appeal. But I would certify those questions to the Supreme Court of Texas. Accordingly, I dissent.

Suppose one section of an insurance policy provides coverage against various enumerated risks. But another section of the policy eliminates coverage for those risks.

In other words, the policy contains two provisions that appear to be in irreconcilable conflict with one another—what one provision giveth, the other taketh away.

So a court will have to decide which provision governs, in the event that an incident occurs that is covered by the first section, but excluded by the other section. Do we apply the coverage provision? Or do we enforce the exclusion? It's impossible to give effect to both provisions. So how is the reader supposed to know which one to apply, and which one to ignore?

If there's truly no way to reconcile the conflict, then "the proper resolution is to apply the unintelligibility canon . . . and to deny effect to both provisions." *Greenbrier Hosp., L.L.C. v. Azar*, 974 F.3d 546, 547–48 (5th Cir. 2020) (quoting Aɴᴛᴏɴɪɴ Sᴄᴀʟɪᴀ & Bʀʏᴀɴ A. Gᴀʀɴᴇʀ, Rᴇᴀᴅɪɴɢ Lᴀᴡ: Tʜᴇ Iɴᴛᴇʀᴘʀᴇᴛᴀᴛɪᴏɴ ᴏF Lᴇɢᴀʟ Tᴇxᴛs 189 (2012)). "After all, if we cannot make a valid choice between two differing interpretations, we are left with the consequence that a text means nothing in particular at all." *Id.* at 548 (quoting Sᴄᴀʟɪᴀ & Gᴀʀɴᴇʀ at 189) (cleaned up).

"But make no mistake: This is a last resort." *Id.* "'Courts rarely reach this result,' because 'outright invalidation is admittedly an unappealing course.'" *Id.* (quoting Sᴄᴀʟɪᴀ & Gᴀʀɴᴇʀ at 189–90).

No. 22-20473

Notably, there are principles of Texas law that may supply a way out of this morass—and thereby avoid the need to invoke Justice Scalia's "last resort" canon.

As the panel majority notes, Texas law protects insureds against "illusory" coverage. That is, Texas law resists any reading of an insurance contract that would render a coverage provision meaningless. *See*, *e.g.*, *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (per curiam) (adopting the insured's construction of an exclusion because the insurer's interpretation "would render coverage under [an] endorsement largely illusory").

In addition, Texas law generally provides that, if an insurance contract "is susceptible of more than one reasonable interpretation," courts must "resolve the uncertainty by adopting the construction that most favors the insured." *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). "[E]xceptions or limitations on liability are strictly construed against the insurer and in favor of the insured." *Id.*

To my mind, there's at least a persuasive argument to be made that these two principles of Texas law suggest we must side with the insured, rather than the insurer, in this case.

To be sure, there's a slight difference between my initial hypothetical and this case. In my hypothetical, one section of the policy provides coverage against various enumerated risks—and another section of the policy eliminates coverage for those risks. Here, by contrast, one section of the policy provides coverage against various enumerated risks—but another section eliminates coverage for *most*, but not *all*, of the risks enumerated in the first section.

The panel majority seems to say that this slight difference in drafting matters. The panel theorizes that the answer varies depending on "whether

No. 22-20473

the policy's Personal and Advertising Injury coverage should be viewed as one 'umbrella' of coverage or carved into subcategories, i.e., bifurcated into personal injury coverage and advertising injury coverage." *Ante*, at 15.

I'm not so sure. Why would Texas law treat coverage as illusory, but *only* if the excluded coverage happens to be structured as an "umbrella" provision—and not if it's drafted as a mere "subcategory" of coverage? It's not clear to me why these principles of Texas law would turn on a drafting quirk.

Rather than decide these questions ourselves, I would certify them to the Supreme Court of Texas. *See, e.g.*, *JCB, Inc. v. The Horsburgh & Scott Co.*, 941 F.3d 144, 145 (5th Cir. 2019).